**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

DR. TAMMY WILLIAMS
1312 Hawaii Place,
Upper Marlboro, MD 20774

    ***Plaintiff,***

    v.

PRINCE GEORGE'S COUNTY
PUBLIC SCHOOLS
14201 School Lane,
Upper Marlboro, MD 20772,

PRINCE GEORGE'S COUNTY
PUBLIC SCHOOLS BOARD OF EDUCATION
Sasscer Administration Building
14201 School Lane
Upper Marlboro, MD 20772,

Dr. Carletta Marrow
In her individual and official capacities as the
Associate Superintendent
Prince George's County Public Schools
14201 School Lane
Upper Marlboro, MD 20772,

Dr. Monica Goldson
In her individual and official capacities as the
Chief Executive Officer
Prince George's County Public Schools
14201 School Lane
Upper Marlboro, MD 20772,

and

Dr. Janice Briscoe
In her individual and official capacities as the
Instructional Director of Cluster 7

Civil No. _____

    (Jury Trial Requested)

Prince George's County Public Schools
14201 School Lane
Upper Marlboro, MD 20772,

***Defendants*.**

## **COMPLAINT**

Plaintiff Dr. Tammy Williams ("Plaintiff" or "Dr. Williams") files this Complaint against Defendant, Prince George's County Public Schools ("PGCPS"); Defendant Prince George's County Public Schools Board of Education ("Board of Educ."); Defendant Dr. Carletta Marrow, in her personal and official capacities as the Associate Superintendent of PGCPS; Defendant Dr. Monica Goldson, in her personal and official capacities as the Chief Executive Officer of PGCPS; and Defendant Dr. Janice Briscoe, in her personal and official capacities as the Instructional Director of Cluster 7 of PGCPS, collectively the "Defendants." Dr. Williams brings this action to redress violations of the First Amendment's Right to Free Speech (enforced through § 42 U.S.C. 1983); Maryland's Declaration of Rights Free Speech Guarantee, Article 40, MD. CONST. Decl. of Rights art. 40; MD. CODE §20-602; and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 ("ADEA").

## **JURISDICTION AND VENUE**

1.      Federal question subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331; 28 U.S.C. §1343; and 42 U.S.C. § 1988.

2.      Supplemental jurisdiction over Plaintiff's state-law claims is proper pursuant to 28 U.S.C. § 1367.

3.      The Court has personal jurisdiction over Defendants because they conduct business throughout Prince George's County, Maryland.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to Plaintiff's claims occurred within this judicial district.


## **PARTIES**

5.      Plaintiff, Dr. Williams, is an individual and resident of Prince George's County, Maryland. Defendant PGCPS has employed Dr. Williams since August 1994.

6.      Defendant, Prince George's County Public Schools ("PGCPS"), is a public school district that serves Prince George's County and is an "employer" within the meaning of the statutes under which Plaintiff brings her claims.

7.      Defendant, Prince George's County Public Schools, Board of Education ("Board of Educ.") consists of nine elected, four appointed and one student Board members who create and approve PGCPS's policies, initiatives, leadership promotions and demotions, and budgets. Pursuant to MD. CODE ANN. EDUC., § 3-103, and *Eller v. Prince George's County Public Schools*, 580 F.Supp.3d 154, 167 (D. Md. 2022), holding that the Board of Education is the proper defendant in federal anti-discrimination lawsuits.

8.      Defendant, Dr. Carletta Marrow, was, at all times relevant to the facts and allegations in this Complaint, the Associate Superintendent for PGCPS Area 3 High Schools & Alternative Schools.

9.      Defendant, Dr. Monica Goldson, was, at all times relevant to the facts and allegations in this Complaint, the Chief Executive Officer of PGCPS.

10.     Defendant, Dr. Janice Briscoe, was, at all times relevant to the facts and allegations in this Complaint, the Instructional Director of Cluster 7 for PGCPS.

## ADMINISTRATIVE REMEDIES

11.     Within 300 days of the illegal conduct of which she complained, on July 25, 2022, Dr. Williams filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) (who, through a workshare agreement, had the Prince George's County Government Office of Human Rights ("PGOHR") conduct the investigation) and signed it on November 21, 2022, (after having the inquiry interview with the EEOC). (**Exhibit A**, Charge of Discrimination)

12.     After more than 180 days, on November 15, 2023, Dr. Williams received a Determination from PGOHR. (**Exhibit B**, Substantial Weight Review).

13.     Dr. Williams has timely filed the instant Complaint, as 90 days from November 15, 2023, is February 12, 2024.

14.     Dr. Williams satisfied all administrative prerequisites prior to bringing this action.

## STATEMENT OF FACTS

15.     Dr. Williams began her employment with the Prince George's County Public Schools in or around August 1994 as an English Teacher.

16.     Over the next thirty (30) years, Dr. Williams would receive an abundance of awards and achievements evidencing her commitment to the PGCPS community. Specifically, Dr. Williams was a fellow for the CEO's Aspiring Principals' Academy from 2003 to 2004; was selected and participated in the Harvard University Principals Center for advanced leadership training in 2004;

was the Award-winning Principal and fellow at the Dr. Vincent E. Reed Principal Leadership Institute at the Washington Post in 2009; authored and presented scholarly research on effective ways to support at-risk and wounded students through alternative schools in 2019; received the High School Principal's Performance Award from 2013 through 2022; and received her National Principal Mentor Certification in 2017 through 2020.

17.    In or around May 2005, Dr. Williams became Principal of Community Based Classroom ("CBC"), an alternative school designed for at-risk students who struggle with traditional schools and remained in that position until she was demoted in July 2022, earning an annual salary of $198,000.

18.    On January 7, 2022, Dr. Carletta Marrow, Associate Superintendent of Area 3 High Schools & Alternative Schools and Dr. Williams' immediate supervisor, informed Dr. Williams that her school would be closing at the end of the academic year, in a Zoom meeting attended by Dr. Larry McRae, Principal, and Dr. Janice Briscoe, Instructional Director of Cluster 7 and other high school principals.

19.    During this Zoom meeting, Dr. Marrow repeatedly placed Dr. Williams on mute, not allowing her to speak. After approximately ninety (90) seconds, Dr. Williams was removed from the Zoom meeting and was unable to rejoin.

20.    Prior to this Zoom meeting, Dr. Marrow had bullied and name-called Dr. Williams, referring to her as a "mockingbird" when Dr. Williams voiced concerns about PGCPS's practices.

21.    Dr. Williams immediately contacted Dr. Monica Goldson, Chief Executive Officer, but Dr. Goldson did not respond until January 10, 2022, when she told Dr. Williams that no final decisions were made, there is a process, and she should refrain from informing her staff. She stated that once everything was approved, she, rather than Dr. Williams, would inform her staff.

22.     After this phone call, Dr. Williams requested and received a copy of the 2022-2023 School District Budget ("Budget") from Raaheela Ahmed, former board member of the Prince George's County Schools Board of Education. The Budget confirmed that CBC was not included in the next academic year's budget, contradicting what Dr. Goldson had told Dr. Williams (i.e., that no final decision had been made as to whether the CBC would continue into the 2022-2023 academic year)

23.     Dr. Williams was not invited to attend the Board of Education, PGCPS, and high school principals' budget meetings from that point forward—even though she had been in previous years. When she inquired as to why she was not involved in the meetings to discuss the 2022-2023 Budget, she received no response.

24.     Being concerned that Dr. Goldson would not communicate the message to her staff about the decision to terminate CBC and close her school--based on Dr. Goldson's failure to inform her that the budget for the next academic year did not include money for the CBC, Dr. Williams informed her staff on January 10, 2022, of the decision to close the school, which led many staff members to commit themselves to saving the school from closure.

25.     As a result of being informed about the intended closure of the CBC, many students, parents, teachers, alumni, business partners, activists, advocates, and staff registered to speak at the next (and subsequent meetings through June 2022) Prince George's County School Board meeting.

26.     On February 3, 2022, Dr. Williams, her staff, and many students of CBC attended the Prince George's County School Board's FY22-23 Proposed Budget Public Hearing where nearly 50 students, parents, teachers, alumni, business partners, activists, advocates, and staff members shared their concerns about the closure of the alternative school.

27.    Dr. Williams herself did not testify at this meeting, as she felt that it would take focus away from the school's closure. However, it was clear that she was in support of their efforts and was an inspiring figure in the fight to keep CBC in the 2022-2023 academic year budget.

28.    At this time, it was no secret to Dr. Marrow, Dr. Briscoe, Dr. Goldson, Dr. Pearl Harmon, Director of Human Resources Operations and Staffing, Dr. Kristi Murphy Baldwin, Chief of Human Resources, and Ms. Sherry Ross, Senior Human Resources Partner, that Dr. Williams' January 10, 2022, meeting with staff was a motivating factor behind the community response. Specifically, Dr.  Goldson was at the February 3, 2022, Public Hearing and heard from the registered speakers.

29.    Prior to the February 3, 2022, Public Hearing, several PGCPS students from CBC were threatened by an anonymous caller to not testify at the upcoming Board meeting. Police investigated these threats.  These targeted threats received media and social media attention.

30.    On February 24, 2022, Dr. Williams spoke publicly for the first time at the Board of Education's meeting before the first vote on the 2022-2023 academic year budget commenced. During her testimony, Dr. Williams stressed the important role played by alternative schools in the community and provided specific statistics about CBC. Specifically, she stated that CBC earned a ninety-five percent (95%) graduation rate and a ninety-three percent (93%) attendance rate in 2020 and similar averages in prior years. Dr. Williams highlighted the tireless efforts of the community and thanked the over one-hundred advocates who spoke to the Board of Education over the last month and a half on behalf of CBC.

31.    Despite the outcry from Dr. Williams and the public against the closure of the alternative schools, the Board of Education voted to approve the 2022-23 academic year budget—which did not include funds for the CBC. Dr. Williams and other advocates, students, parents, teachers,

business partners, alumni, activists and staff then turned their attention to the County Council to overturn the vote, which was ultimately unsuccessful.

32.     After Dr. Williams spoke at the February 24, 2022, Board of Education's public meeting, the Chief of School Support and Leadership, Dr. Helen Coley, Dr. Briscoe, and Dr. Marrow began coming to CBC (both announced and unannounced) and scheduling Zoom meetings to interrogate Dr. Williams and her staff. The purpose of their intrusions into the CBC classrooms was evident: to intimidate Dr. Williams and the CBC students so they would cease their community efforts to save the CBC and alternative schools.

33.     Dr. Marrow and Dr. Briscoe came to CBC and called a staff meeting. In this meeting, they falsely claimed to Dr. Williams's staff that Dr. Williams was aware of the closure before January 10, 2022. Dr. Williams immediately confronted them for lying in this meeting in front of the staff. In this meeting, it was clear that Dr. Marrow and Dr. Briscoe were upset with Dr. Williams' pushback and attempts to correct the record.

34.     Previously, in 2015, Dr. Williams was made aware of the possibility of changes to the Alternative School structure in PGCPS and she was placed on the committee researching those changes. However, this committee rarely included Dr. Williams in their trips out of state to other states' alternative school programs. Dr. Williams only went to one other school in the District of Columbia as part of this role. Dr. Williams sent an email to Dr. Briscoe in 2015 questioning why she was not involved in these out-of-state trips and was never subsequently invited.

35.     Dr. Briscoe—unlike Dr. Williams--was part of this effort until it was dissolved, and she returned to administrating Middle School, rather than High School, education. In the summer of 2021, Dr. Briscoe returned to the High School level and was part of the closure decisions.

36.     During this and subsequent school visits, Dr. Goldson, Dr. Coley, Dr. Marrow, and Dr. Briscoe as well as Board Member Judy Mickens-Murray overly criticized Dr. Williams' work--despite never having made regular visits to CBC in the prior 17 years that Dr. Williams worked there.

37.     On June 10, 2022, Chief Human Resources Officer, Dr. Kristi Murphy Baldwin, sent Dr. Williams a letter confirming that the Alternative Programs in Prince George's County Public Schools will be eliminated effective June 30, 2022. Additionally, Dr. Baldwin informed Dr. Williams that her position will be eliminated on July 15, 2022, and encouraged her to apply for other positions available in PGCPS. Dr. Baldwin further informed Dr. Williams that if she did not secure a new position by that date, Human Resources would follow the Association of Supervisor and Administrative School Personnel ("ASASP") Negotiated Agreement in finding a position for her.

38.     Also on June 10, 2022, Dr. Baldwin sent a letter to Professional School Counselor, Reginald Russell, to inform him that his position would be reduced in the 2022-2023 academic year. Mr. Russell was told that Human Resources will work with him to identify an alternative assignment--unlike Dr. Williams, who had to secure another position for herself without the assistance of Human Resources.

39.     On June 21, 2022, Dr. Williams fell when packing up her office. This resulted in Dr. Williams going on medical leave.  PGCPS's Leave of Absence~Risk Management and Worker's Compensation policy states that "You (Employee) will return to the position you were working in prior to the injury. (Location may Change). Human Resource staff will contact you to arrange for placement."

40.     On June 24, 2022, Dr. Williams sent medical documentation to PGCPS from Dr. Uloma indicating that she will need to be on full bed rest and unable to return to work until July 18, 2022.

41.     Throughout June 2022, Dr. Williams attended interviews for three (3) principal positions in PGCPS. Specifically, Dr. Williams interviewed for the following positions:

        a.   Principal of Non-Traditional High School North;

        b.   Principal of International High School at Largo; and

        c.   Principal of Eleanor Roosevelt High School.

42.     Dr. Williams was not selected for any of these roles despite her extensive experience as a High School Principal and being more qualified than the selectees.

43.     Each interview was conducted by a panel of individuals from the specific school and various director level personnel who certainly had knowledge of Dr. Williams' efforts to stop the closure of the CBC and had knowledge of her age. These individuals include Dr. Marrow, Dr. Briscoe, Dr. David Reese, Director of the Office of Equity and Excellence, Dr. Niki' Brown, Instructional Director for Elementary Schools, among other directors, associate superintendents (Dr. Kassandra Lassiter, Associate Superintendent for Elementary Schools) and Chiefs (Dr. Helen Coley).

44.     The selectee for the principal position at Non-Traditional High School North was Danielle Brooks (age 42). Ms. Brooks had approximately seven (7) years of experience as an assistant principal. It was Dr. Williams who selected Ms. Brooks as an assistant principal and trained her. Prior to being selected for this principal position, Ms. Brooks had never been a principal. Additionally, Ms. Brooks did not assist in the effort to stop CBC's closure.

45.     The selectee for the principal position at International High School at Largo was Dr. Melissa Nankin (age 42). Dr. Nankin had only been an assistant principal and Dr. Williams had

mentored Dr. Nankin's prior supervisor (Ms. Pamela Jones-Smith as a new principal) in that role. Additionally, Dr. Nankin did not assist in the effort to stop CBC's closure.

46.     The selectee for principal of Eleanor Roosevelt High School was Portia Barnes (age 52). Ms. Barnes had never been a principal.  Dr. Williams had presented professional development courses at high school principals' meetings in which assistant principal Ms. Barnes participated in the professional learning.  Additionally, Ms. Barnes did not assist in the effort to stop CBC's closure.

47.     On July 25, 2022, Dr. Baldwin informed Dr. Williams that she will be involuntarily transferred from her position as Principal of CBC to Assistant Principal of Crossland High School.

48.     The Board of Educ. subsequently approved this demotion on August 18, 2022, and was well-aware of Dr. Williams' efforts to avoid the closure of CBC.

49.     The transfer to Assistant Principal represented a significant demotion for Dr. Williams. Notably, her annual salary was decreased by approximately $35,000; her available leave has been decreased; her doctorate degree stipend has been decreased; her retirement has been negatively impacted; and she was placed in an 11-month position, unlike the 12-month position as Principal she held for nearly twenty years.

50.     Other principals whose schools were also closed were given positions that were much more comparable to the positions they held before their schools were closed. They were also allowed to keep their salary. These other principals who were treated more favorably than Dr. Williams include Dr. Carlene Murray, former principal of Northwestern High School. Dr. Murray was also demoted to an assistant principal position--but only temporarily. Dr. Murray was subsequently offered a principal in residence position. Dr. Williams would have accepted a principal in residence position had it been offered to her. Dr. Murray did not engage in the effort to save CBC.

51.     Another principal who was treated more favorably than Dr. Williams includes Mark Dennison, principal of a school that was closed in 2015. Mr. Dennison did not engage in a public fight to save his school. Upon that school's closure, Mr. Dennison received a phone call from Dr. Goldson asking him to identify which school, out of the approximately 28 schools with open principal positions at the time, he would like to be placed as principal. To Dr. Williams's knowledge and belief, the number of total principal positions in PGCPS had not decreased dramatically from 2015 to 2022.  Additionally, the number of available vacancies for principal positions typically ranges from approximately 20-35 vacant principalships each year in PGCPS.

## COUNT I

**NONSELECTION AND DEMOTION- AGE DISCRIMINATION**
**Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et al.***
**DEFENDANTS PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS and**
**PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS BOARD OF EDUCATION**

52.     Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

53.     The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against an employee with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1).

54.     At all pertinent times, Defendants PGCPS and Board of Education were "employers" subject to the provisions of the ADEA. See MD. CODE ANN. EDUC., § 3-103, and *Eller v. Prince George's County Public Schools*, 580 F.Supp.3d 154, 167 (D. Md. 2022), holding that the Board of Education is the proper defendant in federal anti-discrimination lawsuits.

55.     Dr. Williams is an individual over the age of 40 (she is currently 53 years old) and is therefore a member of a class protected under the ADEA.

56.     Defendant PGCPS, in violation of the ADEA, knowingly and intentionally subjected Dr. Williams to disparate treatment based on her age by selecting two individuals for principal positions who are substantially younger than she and had no prior experience as a principal (Ms. Brooks and Ms. Nankin), compared to Dr. Williams, who had 20-plus years as a principal and an undeniable performance record in that role. *See* Paragraphs 44 and 45, *supra*.

57.     Defendant PGCPS, in violation of the ADEA, knowingly and intentionally discriminated against Dr. Williams on the basis of her age when it demoted Dr. Williams to an Assistant Principal position. Dr. Williams's demotion arose directly from PGCPS's decision to not select her for the principal positions for which PGCPS instead selected two individuals who are substantially younger than she and who had no prior experience as a principal.

58.     Defendant Board of Education, in violation of the ADEA, knowingly and intentionally discriminated against Dr. Williams on the basis of her age when it approved the decisions by PGCPS to select for principal positions two individuals who are substantially younger than Dr. Williams and who had no prior experience as a principal (Ms. Brooks and Ms. Nankin).

59.     Defendant Board of Education, in violation of the ADEA, knowingly and intentionally subjected Dr. Williams to disparate treatment based on her age when it approved the decision by PGCPS to demote Dr. Williams to an Assistant Principal position.

60.     Defendants PGCPS and Board of Education have no legitimate business reason for any such acts.

61.     As an actual and proximate cause of Defendants PGCPS and Board of Education's actions, Dr. Williams has suffered loss of her position as a Principal, lost wages and benefits arising from her Principal position, and has incurred substantial attorneys' fees.

62.     Defendants PGCPS and Board of Education's actions as set forth in the instant Complaint (Paragraphs 52-60, *supra*) evince that they knew or showed reckless disregard of whether their conduct was prohibited by the ADEA. Accordingly, Plaintiff is entitled to an award of liquidated damages under the ADEA.  29 U.S.C. § 216(b).

63.     Due to Defendants' PGCPS and Board of Education's actions and willful violations of the ADEA, Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education, or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; liquidated damages; and attorneys' fees.

### COUNT II

**NONSELECTION AND DEMOTION- AGE DISCRIMINATION**
**MARYLAND FAIR EMPLOYMENT PRACTICES ACT, MD. CODE ANN. §20-601 et al**
**DEFENDANTS PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS and**
**PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS BOARD OF EDUCATION**

64.     Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

65.     The Maryland Fair Employment Practices Act ("FEPA"), MD. CODE ANN. §20-606(a)(1)(i), makes it unlawful for an employer to "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment, because of…the individual's race, color, religion, sex, age…."

66.     At all pertinent times, the Defendants PGCPS and Board of Education were "employers" subject to the provisions of MD. CODE ANN. §20-601 et al.

67.     Dr. Williams is an individual over the age of 40 (she is currently 53 years old) and is therefore a member of a class protected under MD. CODE ANN. §20-601 et al.

68.     Defendant PGCPS, in violation of MD. CODE ANN. §20-606(a)(1)(i), knowingly and intentionally subjected Dr. Williams to disparate treatment based on her age by selecting two individuals for principal positions who were substantially younger than she and had no prior experience as a principal (Ms. Brooks and Ms. Nankin), compared to Dr. Williams, who had 20-plus years as a principal and an undeniable performance record in that role. See Paragraphs 44 and 45, *supra*.

69.     Defendant PGCPS, in violation of MD. CODE ANN. §20-606(a)(1)(i), knowingly and intentionally discriminated against Dr. Williams on the basis of her age when it demoted Dr. Williams to an Assistant Principal position. Dr. Williams's demotion arose directly from PGCPS's decision to not select her for the principal positions for which PGCPS selected instead two individuals who are substantially younger than she and who had no prior experience as a principal.

70.     Defendant Board of Education, in violation of MD. CODE ANN. §20-606(a)(1)(i), knowingly and intentionally discriminated against Dr. Williams on the basis of her age when it approved the decisions by PGCPS to select for principal positions two individuals who are substantially younger than Dr. Williams and who had no prior experience as a principal (Ms. Brooks and Ms. Nankin).

71.     Defendant Board of Education, in violation of MD. CODE ANN. §20-606(a)(1)(i), knowingly and intentionally subjected Dr. Williams to disparate treatment based on her age when it approved the decision by PGCPS to demote Dr. Williams to an Assistant Principal position.

72.     Defendants PGCPS and Board of Education have no legitimate business reason for any such acts.

73.     As an actual and proximate cause of Defendants PGCPS and Board of Education's actions, Dr. Williams has suffered loss of her position as a Principal, lost wages and benefits arising from her Principal position, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and has incurred substantial attorneys' fees.

74.     Due to Defendants' PGCPS and Board of Education's violations of MD. CODE ANN. §20-606(a)(1)(i), Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life in the amount of $300,000; and attorneys' fees and costs.

## COUNT III

**FIRST AMENDMENT RETALIATION**
**42 U.S.C. § 1983**
**DEFENDANTS PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS and**
**PRINCE GEORGE'S COUNTY BOARD OF EDUCATION**

75.     Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

76.     "Local governing bodies…can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where…the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978).

77.    "[L]ocal governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.*

78.    "The First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Sammons v. McCarthy*, 606 F.Supp.3d 165, 199 (D. Md. 2022).

79.    "To state a claim of retaliation for the exercise of First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct." *Id.* at 228-229 (citation omitted).

80.    Dr. Williams engaged in protected First Amendment activity when she: (i) spoke on a matter of public concern by verbally appealing to the Board of Education on February 24, 2022 to not close the CBC; (ii) organized registered speakers at the February 3, 2022, and subsequent Board meetings; and (iii) and took action to overturn the Board of Education's vote at the County Council.

81.    In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court reiterated its holding from *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that "a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment." *Perry*, 408 U.S. at 598.

82.     That the closure of CBC and the alternative schools is a matter of public concern is demonstrated by the public outcry against the closure.

83.     Defendants PGCPS and Board of Education took action that adversely affected Dr. Williams's First Amendment rights when they: (i) made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students from making further public statements against the closure of CBC and the alternative schools; (ii) refused to select Dr. Williams for any one of three open principal positions and instead selected three individuals for principal positions who had no prior principal experience; and (iii) demoted Dr. Williams to an Assistant Principal position.

84.     Defendants PGCPS and Board of Education's actions in intimidating Dr. Williams and her students, not selecting Dr. Williams, and in demoting her would "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Sammons*, 606 F.Supp.3d at 229 (citation omitted).

85.     The causal relationship between Dr. Williams' protected First Amendment speech and Defendants PGCPS and Board of Education's actions is well-established by the close temporal proximity between the two. Dr. Williams first engaged in protected First Amendment speech on February 24, 2022. Immediately thereafter, Defendants PGCPS and Board of Education began their campaign of intimidation by making frequent intrusions into Dr. Williams's classroom. Dr. Williams engaged again in protected First Amendment speech when she verbally opposed the Board of Education's vote to close CBC and the alternative schools at a City Council meeting. Defendants PGCPS and Board of Education shortly thereafter closed Dr. Williams's school, refused to select her for any one of three open principal positions—despite her clearly superior qualifications—then demoted her to an Assistant Principal position.

86.     Defendants PGCPS and Board of Education retaliated against Dr. Williams for engaging in protected First Amendment speech when they made frequent intrusions into her classroom in order to intimidate her and her students, refused to select her for any of the three principal positions to which she applied, and demoted her to an Assistant Principal position.

87.     Defendants PGCPS and Board of Education are liable for violating Dr. Williams's First Amendment rights because the course of actions they took in retaliation for Dr. Williams's engaging in protected First Amendment speech reveals their custom or policy of not tolerating public speech which criticizes or opposes school administrators' future plans.

88.     Further, the fact that Defendants PGCPS and Board of Education selected three individuals for principal positions who had no prior principal experience, and who had not publicly opposed the closure of CBC and the alternative schools, shows their violation of Dr. Williams's First Amendment rights arose out of their custom or policy of not tolerating public speech which criticizes or opposes school administrators' future plans.

89.     As an actual and proximate cause of Defendants' PGCPS and Board of Education's actions in violating her First Amendment rights, Dr. Williams has suffered emotional distress, embarrassment, humiliation, reputational damage, lost wages and benefits, and has incurred substantial attorneys' fees.

90.     Due to Defendants' PGCPS and Board of Education's violating Dr. Williams's First Amendment rights, Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

## COUNT IV

**VIOLATION OF MARYLAND'S DECLARATION OF RIGHTS
GUARANTEE OF FREE SPEECH
MARYLAND CONSTITUTION, DECL. OF RIGHTS, ARTICLE 40
DEFENDANTS PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS and
PRINCE GEORGE'S COUNTY BOARD OF EDUCATION**

91.     Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

92.     The Free Speech Guarantee in Maryland's Declaration of Rights provides that, "the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write, and publish his sentiments on all subjects, being responsible for abuse of that privilege." MD. CONST. Decl. of Rights art. 40.

93.     The Maryland Supreme Court has stated that courts "need not consider Article 40 and the First Amendment separately as Article 40 is read generally in *pari materia* with the First Amendment." *Nefedro v. Montgomery County*, 414 Md. 585, 593 n. 5, 996 A.2d 850, 855 n. 5 (2010).

94.     "The First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Sammons v. McCarthy*, 606 F.Supp.3d 165, 199 (D. Md. 2022).

95.     "To state a claim of retaliation for the exercise of First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct." *Id*. at 228-229 (citation omitted).

96.     Dr. Williams engaged in protected First Amendment activity when she: (i) spoke on a matter of public concern by verbally appealing to the Board of Education on February 24, 2022 to not close the CBC; (ii) organized registered speakers at the February 3, 2022, and subsequent Board meetings; and (iii) and took action to overturn the Board of Education's vote at the County Council.

97.     In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court reiterated its holding from *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that "a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment." *Perry*, 408 U.S. at 598.

98.     That the closure of CBC and the alternative schools is a matter of public concern is demonstrated by the public outcry against the closure.

99.     Defendants PGCPS and Board of Education took action that adversely affected Dr. Williams's First Amendment rights when they: (i) made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students from making further public statements against the closure of CBC and the alternative schools; (ii) refused to select Dr. Williams for any one of three open principal positions and instead selected three individuals for principal positions who had no prior principal experience; and (iii) demoted Dr. Williams to an Assistant Principal position.

100.    Defendants PGCPS and Board of Education's actions in intimidating Dr. Williams and her students, not selecting Dr. Williams, and in demoting her would "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Sammons*, 606 F.Supp.3d at 229 (citation omitted).

101.    The causal relationship between Dr. Williams' protected First Amendment speech and Defendants PGCPS and Board of Education's actions is well-established by the close temporal proximity between the two. Dr. Williams first engaged in protected First Amendment speech on February 24, 2022. Immediately thereafter, Defendants PGCPS and Board of Education began their campaign of intimidation by making frequent intrusions into Dr. Williams's classroom. Dr. Williams engaged again in protected First Amendment speech when she verbally opposed the Board of Education's vote to close CBC and the alternative schools at a City Council meeting. Defendants PGCPS and Board of Education shortly thereafter closed Dr. Williams's school, refused to select her for any one of three open principal positions—despite her clearly superior qualifications—then demoted her to an Assistant Principal position.

102.    Defendants PGCPS and Board of Education retaliated against Dr. Williams for engaging in protected First Amendment speech when they made frequent intrusions into her classroom in order to intimidate her and her students, refused to select her for any of the three principal positions to which she applied, and demoted her to an Assistant Principal position.

103.    Defendants PGCPS and Board of Education are liable for violating Dr. Williams's First Amendment rights because the course of actions they took in retaliation for Dr. Williams's engaging in protected First Amendment speech reveals their custom or policy of not tolerating public speech which criticizes or opposes school administrators' future plans.

104.    Further, the fact that Defendants PGCPS and Board of Education selected three individuals for principal positions who had no prior principal experience, and who had not publicly opposed the closure of CBC and the alternative schools, shows their violation of Dr. Williams's First Amendment rights arose out of their custom or policy of not tolerating public speech which criticizes or opposes school administrators' future plans.

105.    As an actual and proximate cause of Defendants' PGCPS and Board of Education's actions in violating Dr. Williams's right of free speech guaranteed to her through Maryland's Declaration of Rights, Article 40, Dr. Williams has suffered emotional distress, embarrassment, humiliation, reputational damage, lost wages and benefits, and has incurred substantial attorneys' fees.

106.    Due to Defendants' PGCPS and Board of Education's violating Dr. Williams's right of free speech guaranteed to her through Maryland's Declaration of Rights, Article 40,  Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

## COUNT V

**FIRST AMENDMENT RETALIATION**
**42 U.S.C. § 1983**
**DEFENDANT DR. CARLETTA MARROW,**
**In her Individual and Official Capacity as the Associate Superintendent of PGCPS**

107.    Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

108.    "The First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Sammons v. McCarthy*, 606 F.Supp.3d 165, 199 (D. Md. 2022).

109.    "To state a claim of retaliation for the exercise of First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal

relationship between the protected activity and the defendant's conduct." *Id*. at 228-229 (citation omitted).

110.    Dr. Williams engaged in protected First Amendment activity when she: (i) spoke on a matter of public concern by verbally appealing to the Board of Education on February 24, 2022 to not close the CBC; (ii) organized registered speakers at the February 3, 2022, and subsequent Board meetings; and (iii) and took action to overturn the Board of Education's vote at the County Council.

111.    In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court reiterated its holding from *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that "a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment." *Perry*, 408 U.S. at 598.

112.    That the closure of CBC and the alternative schools is a matter of public concern is demonstrated by the public outcry against the closure.

113.    Defendant Dr. Marrow took action that adversely affected Dr. Williams's First Amendment rights when she: (i) made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students from making further public statements against the closure of CBC and the alternative schools; (ii) refused to select Dr. Williams for any one of three open principal positions and instead selected three individuals for principal positions who had no prior principal experience; and (iii) demoted Dr. Williams to an Assistant Principal position.

114.    Defendant Dr. Marrow's actions in intimidating Dr. Williams and her students, not selecting Dr. Williams, and in demoting her would "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Sammons*, 606 F.Supp.3d at 229 (citation omitted).

115.    The causal relationship between Dr. Williams' protected First Amendment speech and Defendant Dr. Marrow's actions is well-established by the close temporal proximity between the two. Dr. Williams first engaged in protected First Amendment speech on February 24, 2022. Immediately thereafter, Defendant Dr. Marrow began her campaign of intimidation by making frequent intrusions into Dr. Williams's classroom. Dr. Williams engaged again in protected First Amendment speech when she verbally opposed the Board of Education's vote to close CBC and the alternative schools at a City Council meeting. Defendant Dr. Marrow shortly thereafter closed Dr. Williams's school, refused to select her for any one of three open principal positions—despite her clearly superior qualifications—then demoted her to an Assistant Principal position.

116.    Defendant Dr. Marrow retaliated against Dr. Williams for engaging in protected First Amendment speech when she made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students, refused to select her for any of the three principal positions to which she applied and was the most highly qualified, and demoted her to an Assistant Principal position.

117.    By retaliating against Dr. Williams in making frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students, refusing to select Dr. Williams for any of the three principal positions to which she applied and was the most highly qualified, and demoting Dr. Williams to an Assistant Principal position, Defendant Dr. Marrow acted with reckless or callous disregard for Dr. Williams's First Amendment rights.

118.    Defendant Dr. Marrow has no legitimate business reason for her actions.

119.    As an actual and proximate cause of Defendant Dr. Marrow's actions in violating Dr. Williams's First Amendment rights, Dr. Williams has suffered emotional distress, embarrassment,

humiliation, reputational damage, lost wages and benefits, and has incurred substantial attorneys' fees.

120.    Due to Defendant Dr. Marrow's violating Dr. Williams's First Amendment rights, Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

121.    Due to Defendant Dr. Marrow's acting with reckless or callous disregard for Dr. Williams's first amendment rights, Dr. Williams seeks punitive damages against Dr. Marrow.

## COUNT VI

**VIOLATION OF MARYLAND'S DECLARATION OF RIGHTS
GUARANTEE OF FREE SPEECH
MARYLAND CONSTITUTION, DECL. OF RIGHTS, ARTICLE 40
DEFENDANT DR. CARLETTA MARROW,
In her Individual and Official Capacity as the Associate Superintendent**

122.    Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

123.    The Free Speech Guarantee in Maryland's Declaration of Rights provides that, "the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write, and publish his sentiments on all subjects, being responsible for abuse of that privilege." MD. CONST. Decl. of Rights art. 40.

124.    The Maryland Supreme Court has stated that courts "need not consider Article 40 and the First Amendment separately as Article 40 is read generally in pari materia with the First

Amendment." *Nefedro v. Montgomery County*, 414 Md. 585, 593 n. 5, 996 A.2d 850, 855 n. 5 (2010).

125.   "The First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Sammons v. McCarthy*, 606 F.Supp.3d 165, 199 (D. Md. 2022).

126.   "To state a claim of retaliation for the exercise of First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct." *Id*. at 228-229 (citation omitted).

127.   Dr. Williams engaged in protected First Amendment activity when she: (i) spoke on a matter of public concern by verbally appealing to the Board of Education on February 24, 2022 to not close the CBC; (ii) organized registered speakers at the February 3, 2022, and subsequent Board meetings; and (iii) and took action to overturn the Board of Education's vote at the County Council.

128.   In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court reiterated its holding from *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that "a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment." *Perry*, 408 U.S. at 598.

129.   That the closure of CBC and the alternative schools is a matter of public concern is demonstrated by the public outcry against the closure.

130.     Defendant Dr. Marrow took action that adversely affected Dr. Williams's First Amendment rights when she: (i) made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students from making further public statements against the closure of CBC and the alternative schools; (ii) refused to select Dr. Williams for any one of three open principal positions and instead selected three individuals for principal positions who had no prior principal experience; and (iii) demoted Dr. Williams to an Assistant Principal position.

131.     Defendant Dr. Marrow's actions in intimidating Dr. Williams and her students, not selecting Dr. Williams, and in demoting her would "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Sammons*, 606 F.Supp.3d at 229 (citation omitted).

132.     The causal relationship between Dr. Williams' protected First Amendment speech and Defendant Dr. Marrow's actions is well-established by the close temporal proximity between the two. Dr. Williams first engaged in protected First Amendment speech on February 24, 2022. Immediately thereafter, Defendant Dr. Marrow began her campaign of intimidation by making frequent intrusions into Dr. Williams's classroom. Dr. Williams engaged again in protected First Amendment speech when she verbally opposed the Board of Education's vote to close CBC and the alternative schools at a City Council meeting. Defendant Dr. Marrow shortly thereafter closed Dr. Williams's school, refused to select her for any one of three open principal positions—despite her clearly superior qualifications—then demoted her to an Assistant Principal position.

133.     Defendant Dr. Marrow retaliated against Dr. Williams for engaging in protected First Amendment speech when she made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students, refused to select her for any of the three principal positions to which she applied and was the most highly qualified, and demoted her to an Assistant Principal position.

134.    By retaliating against Dr. Williams in making frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students, refusing to select Dr. Williams for any of the three principal positions to which she applied and was the most highly qualified, and demoting Dr. Williams to an Assistant Principal position, Defendant Dr. Marrow acted with reckless or callous disregard for Dr. Williams's First Amendment rights.

135.    As an actual and proximate cause of Defendant Dr. Marrow's actions in violating Dr. Williams's right of free speech guaranteed to her through Maryland's Declaration of Rights, Article 40, Dr. Williams has suffered emotional distress, embarrassment, humiliation, reputational damage, lost wages and benefits, and has incurred substantial attorneys' fees.

136.    Due to Defendant Dr. Marrow's violating Dr. Williams's right of free speech guaranteed to her through Maryland's Declaration of Rights, Article 40,  Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

137.    Due to Defendant Dr. Marrow's acting with reckless or callous disregard for Dr. Williams's first amendment rights, Dr. Williams seeks punitive damages against Dr. Marrow.


## COUNT VII

**FIRST AMENDMENT RETALIATION**
**42 U.S.C. § 1983**
**DEFENDANT DR. MONICA GOLDSON,**
**In her Individual and Official Capacities as the Chief Executive Officer of PGCPS**

138.    Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

139.    "The First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Sammons v. McCarthy,* 606 F.Supp.3d 165, 199 (D. Md. 2022).

140.    "To state a claim of retaliation for the exercise of First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct." *Id.* at 228-229 (citation omitted).

141.    Dr. Williams engaged in protected First Amendment activity when she: (i) spoke on a matter of public concern by verbally appealing to the Board of Education on February 24, 2022 to not close the CBC; (ii) organized registered speakers at the February 3, 2022, and subsequent Board meetings; and (iii) and took action to overturn the Board of Education's vote at the County Council.

142.    In *Perry v. Sindermann,* 408 U.S. 593 (1972), the Supreme Court reiterated its holding from *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that "a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment." *Perry,* 408 U.S. at 598.

143.    That the closure of CBC and the alternative schools is a matter of public concern is demonstrated by the public outcry against the closure.

144.    Defendant Dr. Goldson took action that adversely affected Dr. Williams's First Amendment rights when she: (i) refused to select Dr. Williams for any one of three open principal positions and instead selected three individuals for principal positions who had no prior principal experience; and (ii) demoted Dr. Williams to an Assistant Principal position.

145.    Defendant Dr. Goldson's actions in not selecting Dr. Williams for any one of the three principal positions and in demoting her would "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Sammons,* 606 F.Supp.3d at 229 (citation omitted).

146.    The causal relationship between Dr. Williams's protected First Amendment speech and Defendant Dr. Marrow's actions is well-established by the close temporal proximity between the two. Dr. Williams first engaged in protected First Amendment speech on February 24, 2022 and engaged again in protected First Amendment speech when she verbally opposed the Board of Education's vote to close CBC and the alternative schools at a City Council meeting. Defendant Dr. Goldson shortly thereafter closed Dr. Williams's school, refused to select her for any one of three open principal positions—despite her clearly superior qualifications—then demoted her to an Assistant Principal position.

147.    Defendant Dr. Goldson retaliated against Dr. Williams for engaging in protected First Amendment speech when refused to select her for any of the three principal positions to which she applied and was the most highly qualified and demoted her to an Assistant Principal position.

148.    By retaliating against Dr. Williams in refusing to select Dr. Williams for any of the three principal positions to which she applied and was the most qualified, and demoting Dr. Williams to an Assistant Principal position, Defendant Dr. Goldson acted with reckless or callous disregard for Dr. Williams's First Amendment rights.

149.    Defendant Dr. Goldson has no legitimate business reason for her actions.

150.    As an actual and proximate cause of Defendant Dr. Goldson's actions in violating Dr. Williams's First Amendment rights, Dr. Williams has suffered emotional distress, embarrassment, humiliation, reputational damage, lost wages and benefits, and has incurred substantial attorneys' fees.

151.    Due to Defendant Dr. Goldson's violating Dr. Williams's First Amendment rights, Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

152.    Due to Defendant Dr. Goldson's acting with reckless or callous disregard for Dr. Williams's first amendment rights, Dr. Williams seeks punitive damages against Dr. Goldson.


## COUNT VIII

**VIOLATION OF MARYLAND'S DECLARATION OF RIGHTS
GUARANTEE OF FREE SPEECH
MARYLAND CONSTITUTION, DECL. OF RIGHTS, ARTICLE 40
DEFENDANT DR. MONICA GOLDSON
In her Individual and Official Capacities as the Chief Executive Officer of PGCPS**

153.    Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

154.    The Free Speech Guarantee in Maryland's Declaration of Rights provides that, "the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to speak, write, and publish his sentiments on all subjects, being responsible for abuse of that privilege." MD. CONST. Decl. of Rights art. 40.

155.    The Maryland Supreme Court has stated that courts "need not consider Article 40 and the First Amendment separately as Article 40 is read generally *in pari materia* with the First Amendment." *Nefedro v. Montgomery County*, 414 Md. 585, 593 n. 5, 996 A.2d 850, 855 n. 5 (2010).

156.    "The First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Sammons v. McCarthy*, 606 F.Supp.3d 165, 199 (D. Md. 2022).

157.    "To state a claim of retaliation for the exercise of First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct." *Id*. at 228-229 (citation omitted).

158.    Dr. Williams engaged in protected First Amendment activity when she: (i) spoke on a matter of public concern by verbally appealing to the Board of Education on February 24, 2022 to not close the CBC; (ii) organized registered speakers at the February 3, 2022, and subsequent Board meetings; and (iii) and took action to overturn the Board of Education's vote at the County Council.

159.    In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court reiterated its holding from *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that "a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment." *Perry*, 408 U.S. at 598.

160.     That the closure of CBC and the alternative schools is a matter of public concern is demonstrated by the public outcry against the closure.

161.     Defendant Dr. Goldson took action that adversely affected Dr. Williams's First Amendment rights when she: (i) refused to select Dr. Williams for any one of three open principal positions and instead selected three individuals for principal positions who had no prior principal experience; and (ii) demoted Dr. Williams to an Assistant Principal position.

162.     Defendant Dr. Goldson's actions in not selecting Dr. Williams for a principal position, even though she was the most qualified, and in demoting her would "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Sammons*, 606 F.Supp.3d at 229 (citation omitted).

163.     The causal relationship between Dr. Williams's protected First Amendment speech and Defendant Dr. Goldson's actions is well-established by the close temporal proximity between the two. Dr. Williams first engaged in protected First Amendment speech on February 24, 2022 and engaged again in protected First Amendment speech when she verbally opposed the Board of Education's vote to close CBC and the alternative schools at a City Council meeting. Defendant Dr. Goldson shortly thereafter closed Dr. Williams's school, refused to select her for any one of three open principal positions—despite her clearly superior qualifications—then demoted her to an Assistant Principal position.

164.     Defendant Dr. Goldson retaliated against Dr. Williams for engaging in protected First Amendment speech when she refused to select her for any of the three principal positions to which she applied and was the most highly qualified and demoted her to an Assistant Principal position.

165.     By retaliating against Dr. Williams in refusing to select Dr. Williams for any of the three principal positions to which she applied and was the most qualified and demoting Dr. Williams to

an Assistant Principal position, Defendant Dr. Goldson acted with reckless or callous disregard for Dr. Williams's First Amendment rights.

166.    As an actual and proximate cause of Defendant Dr. Goldson's actions in violating Dr. Williams's right of free speech guaranteed to her through Maryland's Declaration of Rights, Article 40, Dr. Williams has suffered emotional distress, embarrassment, humiliation, reputational damage, lost wages and benefits, and has incurred substantial attorneys' fees.

167.    Due to Defendant Dr. Goldson's violating Dr. Williams's right of free speech guaranteed to her through Maryland's Declaration of Rights, Article 40,  Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

168.    Due to Defendant Dr. Goldson's acting with reckless or callous disregard for Dr. Williams's first amendment rights, Dr. Williams seeks punitive damages against Dr. Goldson.

## COUNT IX

**FIRST AMENDMENT RETALIATION**
**42 U.S.C. § 1983**
**DEFENDANT DR. JANICE BRISCOE,**
**In her Individual and Official Capacities as the Instructional Director of Cluster 7**

169.    Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

170. "The First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Sammons v. McCarthy,* 606 F.Supp.3d 165, 199 (D. Md. 2022).

171. "To state a claim of retaliation for the exercise of First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct." *Id.* at 228-229 (citation omitted).

172. Dr. Williams engaged in protected First Amendment activity when she: (i) spoke on a matter of public concern by verbally appealing to the Board of Education on February 24, 2022 to not close the CBC; (ii) organized registered speakers at the February 3, 2022, and subsequent Board meetings; and (iii) and took action to overturn the Board of Education's vote at the County Council.

173. In *Perry v. Sindermann,* 408 U.S. 593 (1972), the Supreme Court reiterated its holding from *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that "a teacher's public criticism of his superiors on matters of public concern may be constitutionally protected and may, therefore, be an impermissible basis for termination of his employment." *Perry,* 408 U.S. at 598.

174. That the closure of CBC and the alternative schools is a matter of public concern is demonstrated by the public outcry against the closure.

175. Defendant Dr. Briscoe took action that adversely affected Dr. Williams's First Amendment rights when she: (i) made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students from making further public statements against the closure of CBC and the

alternative schools; (ii) refused to select Dr. Williams for any one of three open principal positions and instead selected three individuals for principal positions who had no prior principal experience; and (iii) demoted Dr. Williams to an Assistant Principal position.

176.   Defendant Dr. Briscoe's actions in intimidating Dr. Williams and her students, not selecting Dr. Williams, and in demoting her would "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Sammons,* 606 F.Supp.3d at 229 (citation omitted).

177.   The causal relationship between Dr. Williams' protected First Amendment speech and Defendant Dr. Briscoe's actions is well-established by the close temporal proximity between the two. Dr. Williams first engaged in protected First Amendment speech on February 24, 2022. Immediately thereafter, Defendant Dr. Briscoe began her campaign of intimidation by making frequent intrusions into Dr. Williams's classroom. Dr. Williams engaged again in protected First Amendment speech when she verbally opposed the Board of Education's vote to close CBC and the alternative schools at a City Council meeting. Defendant Dr. Briscoe shortly thereafter closed Dr. Williams's school, refused to select her for any one of three open principal positions—despite her clearly superior qualifications—then demoted her to an Assistant Principal position.

178.   Defendant Dr. Briscoe retaliated against Dr. Williams for engaging in protected First Amendment speech when she made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students, refused to select her for any of the three principal positions to which she applied and was the most highly qualified, and demoted her to an Assistant Principal position.

179.   By retaliating against Dr. Williams in making frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students, refusing to select Dr. Williams for any of the three principal positions to which she applied and was the most highly qualified, and demoting

Dr. Williams to an Assistant Principal position, Defendant Dr. Briscoe acted with reckless or callous disregard for Dr. Williams's First Amendment rights.

180.     Defendant Dr. Briscoe has no legitimate business reason for her actions.

181.     As an actual and proximate cause of Defendant Dr. Briscoe's actions in violating Dr. Williams's First Amendment rights, Dr. Williams has suffered emotional distress, embarrassment, humiliation, reputational damage, lost wages, and benefits, and has incurred substantial attorneys' fees.

182.     Due to Defendant Dr. Briscoe's violating Dr. Williams's First Amendment rights, Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

183.     Due to Defendant Dr. Briscoe's acting with reckless or callous disregard for Dr. Williams's first amendment rights, Dr. Williams seeks punitive damages against Dr. Briscoe.


### COUNT X

**VIOLATION OF MARYLAND'S DECLARATION OF RIGHTS
GUARANTEE OF FREE SPEECH
MARYLAND CONSTITUTION, DECL. OF RIGHTS, ARTICLE 40
DEFENDANT DR. JANICE BRISCOE,
In her Individual and Official Capacity as the Instructional Director of Cluster 7**

184.     Dr. Williams incorporates by reference paragraphs 11 through 51 above as if fully stated herein.

185.     The Free Speech Guarantee in Maryland's Declaration of Rights provides that, "the liberty of the press ought to be inviolably preserved; that every citizen of the State ought to be allowed to

speak, write, and publish his sentiments on all subjects, being responsible for abuse of that privilege." MD. CONST. Decl. of Rights art. 40.

186.    The Maryland Supreme Court has stated that courts "need not consider Article 40 and the First Amendment separately as Article 40 is read generally *in pari materia* with the First Amendment." *Nefedro v. Montgomery County*, 414 Md. 585, 593 n. 5, 996 A.2d 850, 855 n. 5 (2010).

187.    "The First Amendment prohibits government officials from subjecting individuals to 'retaliatory actions' after the fact for having engaged in protected speech." *Sammons v. McCarthy*, 606 F.Supp.3d 165, 199 (D. Md. 2022).

188.    "To state a claim of retaliation for the exercise of First Amendment rights, a plaintiff must show that (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct." *Id*. at 228-229 (citation omitted).

189.    Dr. Williams engaged in protected First Amendment activity when she: (i) spoke on a matter of public concern by verbally appealing to the Board of Education on February 24, 2022 to not close the CBC; (ii) organized registered speakers at the February 3, 2022, and subsequent Board meetings; and (iii) and took action to overturn the Board of Education's vote at the County Council.

190.    In *Perry v. Sindermann*, 408 U.S. 593 (1972), the Supreme Court reiterated its holding from *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) that "a teacher's public criticism of his superiors on matters of public concern may be constitutionally

protected and may, therefore, be an impermissible basis for termination of his employment." *Perry*, 408 U.S. at 598.

191.   That the closure of CBC and the alternative schools is a matter of public concern is demonstrated by the public outcry against the closure.

192.   Defendant Dr. Briscoe took action that adversely affected Dr. Williams's First Amendment rights when she: (i) made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students from making further public statements against the closure of CBC and the alternative schools; (ii) refused to select Dr. Williams for any one of three open principal positions and instead selected three individuals for principal positions who had no prior principal experience; and (iii) demoted Dr. Williams to an Assistant Principal position.

193.   Defendant Dr. Briscoe's actions in intimidating Dr. Williams and her students, not selecting Dr. Williams, and in demoting her would "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Sammons*, 606 F.Supp.3d at 229 (citation omitted).

194.   The causal relationship between Dr. Williams' protected First Amendment speech and Defendant Dr. Briscoe's actions is well-established by the close temporal proximity between the two. Dr. Williams first engaged in protected First Amendment speech on February 24, 2022. Immediately thereafter, Defendant Dr. Briscoe began her campaign of intimidation by making frequent intrusions into Dr. Williams's classroom. Dr. Williams engaged again in protected First Amendment speech when she verbally opposed the Board of Education's vote to close CBC and the alternative schools at a City Council meeting. Defendant Dr. Briscoe shortly thereafter closed Dr. Williams's school, refused to select her for any one of three open principal positions—despite her clearly superior qualifications—then demoted her to an Assistant Principal position.

195.    Defendant Dr. Briscoe retaliated against Dr. Williams for engaging in protected First Amendment speech when she made frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students, refused to select her for any of the three principal positions to which she applied and was the most highly qualified, and demoted her to an Assistant Principal position.

196.    By retaliating against Dr. Williams in making frequent intrusions into Dr. Williams's classroom in order to intimidate her and her students, refusing to select Dr. Williams for any of the three principal positions to which she applied and was the most highly qualified, and demoting Dr. Williams to an Assistant Principal position, Defendant Dr. Briscoe acted with reckless or callous disregard for Dr. Williams's First Amendment rights.

197.    As an actual and proximate cause of Defendant Dr. Briscoe's actions in violating Dr. Williams's right of free speech guaranteed to her through Maryland's Declaration of Rights, Article 40, Dr. Williams has suffered emotional distress, embarrassment, humiliation, reputational damage, lost wages and benefits, and has incurred substantial attorneys' fees.

198.    Due to Defendant Dr. Briscoe's violating Dr. Williams's right of free speech guaranteed to her through Maryland's Declaration of Rights, Article 40,  Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

199.    Due to Defendant Dr. Briscoe's acting with reckless or callous disregard for Dr. Williams's first amendment rights, Dr. Williams seeks punitive damages against Dr. Briscoe.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Dr. Tammy Williams, respectfully requests that this Honorable Court enter judgment in her favor on all counts of her Complaint and against Defendant Prince George's County Public Schools, Defendant Prince George's County Board of Education, Defendant Dr. Carletta Marrow, Defendant Dr. Monica Goldson, and Defendant Dr. Janice Briscoe, and that she be awarded the following relief:

(a) Entry of judgment in favor of Dr. Williams on all Counts;

(b) Awards of relief under:

**Count I against PGCPS and Board of Education:** Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education, or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; liquidated damages; and attorneys' fees and costs.

**Count II against PGCPS and Board of Education:** Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, and loss of enjoyment of life in the amount of $300,000; and attorneys' fees and costs.

**Count III against PGCPS and Board of Education:** Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and

the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

**Count IV against PGCPS and Board of Education:** Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; and attorneys' fees and costs.

**Counts V and VI against Dr. Carletta Marrow:** Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; punitive damages; and attorneys' fees and costs.

**Counts VII and VIII against Dr. Monica Goldson:** Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-

pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; punitive damages; and attorneys' fees and costs.

**Counts IX and X against Dr. Janice Briscoe:** Dr. Williams seeks reinstatement into a Principal position at a school agreed upon by her and PGCPS and the Board of Education or, in the alternative, a Principal in Residence position and/or promotion; lost wages and benefits arising from the loss of her position as a Principal; non-pecuniary compensatory damages for her emotional pain and suffering, mental anguish, humiliation, embarrassment, and reputational damage; punitive damages; and attorneys' fees and costs.

(c) Award of pre and post judgment interest for Plaintiff; and

(d) Any other relief that this Court deems equitable, appropriate, and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/Francisco E. Mundaca*
Francisco E. Mundaca, Esq. (MD Bar No. 21701)
THE SPIGGLE LAW FIRM, P.C.
3601 Eisenhower Avenue, Suite 425
Alexandria, Virginia 22304
Direct Line: (571) 416-9791
Main Line: (202) 449-8527
Facsimile: (202) 517-9179
Email: fmundaca@spigglelaw.com

*Counsel for Plaintiff, Dr. Tammy Williams*